766 A.2d 651

**Catherine A. SHORT**

v.

**Jeffrey R. SHORT.**

**No. 2342, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 6, 2001.

**572**

Barbara E. Palmer, Rockville, for appellant.

Robert E. Grant (Furey, Doolan & Abell, LLP, on the brief) Chevy Chase, for appellee.

Argued before MOYLAN,\* KENNEY, VICTOR K. BUTANIS, (Specially Assigned), JJ.

BUTANIS, Judge.

From the Circuit Court for Montgomery County, this appeal arises from a divorce proceeding between Catherine Arlene Short, ("Mrs. Short"), appellant, and Jeffrey Ronald Short ("Mr. Short"), appellee. On February 19, 1986, appellant was granted an absolute divorce from appellee, and on January 29, 1987, an Earnings Withholding Order was entered, citing the obligation of appellee to provide child support pursuant to that judgment. Appellant, who now brings this action for contempt for failure to pay a monetary award and child support, presents the following questions for our review:

1. Whether the trial court erred in failing to find enforceable money judgments in the Agreement and/or in the Judgment of Absolute Divorce and in denying Appellant's Motion to Hold Defendant in Contempt, for Judgment, to Modify Earnings Withholding Order and for Other Appropriate Relief and Motion for Reconsideration, Motion to Revise, Alter and Amend Judgment, for Further Hearing and for Other Appropriate Relief.

2. Whether the trial court erred in denying Appellant's Motion seeking to record and index the money judgments *nunc pro tunc.*

For the following reasons, we shall answer "no" to questions one and two, and, therefore, affirm the judgment of the circuit court.

### Background

Appellant and appellee were married on June 2, 1979. On August 30, 1980, Jason Michael Short, ("Jason"), the parties'

---

\* Moylan, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

only child, was born of that marriage. Appellant filed a Complaint for absolute divorce from appellee in the Circuit Court for Montgomery County on March 14, 1985.

On February 14, 1986, appellant and appellee appeared before the Honorable James L. Ryan, then Domestic Relations Master in the Circuit Court for Montgomery County, relative to their divorce proceeding. At that time, the parties reached an Agreement, which provided in pertinent part, as follows:

> (3) * * * The parties acknowledge that there is a $300 arrearage to date in said payments (i.e. $50 per month for 6 months). Judgment for $300 is entered for Catherine Short against Jeffrey Short. * * *
>
> (7) judgment for Catherine Short against Jeffrey R. Short for payment of bills, past due child support and all other marital claims inclusive of waiver of military pension and retirement be and the same hereby is entered in the sum of $7,000.00 and Jeffrey R. Short is given a stay of execution in said judgment upon the condition that beginning 11/1/86, and on the first day of each month thereafter, he pay unto Catherine Short the sum of $50.00 per month until same is paid in full. In the event any payment is missed, or not paid within 10 days from the first of the month, the stay of execution in judgment is vacated and the balance may be collected in full at said time. (The parties acknowledge that $5000.00 of this judgment relates to past due and unpaid child support.)

Ongoing child support was to be paid at $350/month, which did not include the payment toward arrears. The Agreement was reduced to writing by counsel for appellant, who was excused from attending the afternoon hearing.

In order to expedite the divorce proceeding and to avoid having to return on a later date, the parties agreed to proceed with the hearing that afternoon.[1] The parties proceeded

---

1. Both parties were in the military and had difficulty trying to set in a mutual time for a hearing.

unrepresented and the hearing for absolute divorce ensued. At the conclusion of the hearing, Master Ryan made the following findings:

All right. Mr. and Mrs. Short, the Court will grant you a judgment of absolute divorce. The terms of the agreement which has been marked as Plaintiff's Exhibit No. 1 will be incorporated but not merged into this final judgment of absolute divorce as far as the Court has jurisdiction to do that, and will contain the required language of the Federal Wage Withhold Act, and the costs of this case will be assessed to the plaintiff.

The Judgment of Absolute Divorce was signed by the Master and was entered by the Court on February 20, 1986.[2]

Appellee did not begin making payments towards the $7,000 on November 1, 1986. Consequently, on December 23, 1986, appellant filed a motion for entry of an earnings withholding order. The Court granted that motion on January 28, 1987.[3] On April 30, 1999, almost twelve and a half years later, appellant filed a Motion for Contempt and Judgment[4], alleging that appellee was more than $12,000 in arrears.[5] Appellee filed a cross-motion asking the circuit court to terminate the

---

**2.** Appellee contends that the judgment of absolute divorce rendered on this date specified that the Agreement was incorporated, but not merged into the judgment.

**3.** The subsequent Order from that motion found an arrearage of $5,000. The Order directed appellee's employer, the United States Navy, to withhold $350 per month for current child support, plus an additional $35 per month towards the arrearage. The Navy payroll office responsible for processing appellee's pay, withheld a total of $385 per month.

**4.** That motion asked the court to grant a judgment in the full amount of arrears to date, for appropriate sanctions, and for modification of the existing earnings withholding order to obtain the maximum amount toward arrears. At the time of filing that motion, appellant added post-judgment interest at 10% per annum.

**5.** Appellee contends that this "outstanding balance" is a result of appellant's "post-judgment interest calculated at 10% per annum" which appellee believes was based upon the compound interest accruing on the $7,300 starting February 19, 1986. *See supra*, note 4 and accompanying text.

earnings withholding, on the basis that their son, Jason, had turned 18 years old on August 30, 1998. The Court denied appellant's motion. On September 29, 1999, appellant filed a Motion for Reconsideration, Motion to Revise, Alter and Amend Judgment, for Further Hearing and for Other Appropriate Relief and a Motion for Entry of Judgments *Nunc Pro Tunc* to February 20, 1986. These motions were subsequently denied. This appeal followed.[6]

## Discussion

### I. Circuit Court's Failure to Find Money Judgments

Appellant contends that the trial court erred in failing to find enforceable money judgments in the parties' prior agreements and in denying that requested relief. Appellant asserts that this Court has held that "an agreement that has been incorporated, but not merged into the final decree, may be enforced as a judgment or as an independent contract." *Fultz v. Shaffer,* 111 Md.App. 278, 298, 681 A.2d 568 (1996). Although we agree with appellant on this point of law, that is not the only determinative factor for the issues at bar.

 Whether a final judgment has been entered must be determined by reference to the docket entry itself. *See Waller v. Maryland Nat'l Bank,* 332 Md. 375, 378, 631 A.2d 447 (1993).[7] Further, "[i]f a ruling of the court is to constitute

---

6. Appellant explains that she filed a Notice of Appeal to the Court of Special Appeals on November 12, 1999 from the October 14, 1999 and the November 3, 1999 Orders. However, appellant notes that because the latter Order was not entered until November 15, 1999, she filed a second notice of appeal to include the denial of the Motion for Entry of *Judgment Nunc Pro Tunc* and the Motion to Revise, Alter and Amend Judgment.

7. The *Waller* Court relied on Maryland Rule 2–601, which, at the time, provided:

> (a) When Entered.—Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the clerk shall enter the judgment as directed by the court. Unless

a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601." *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989); *see also Anthony v. Clark,* 335 Md. 579, 588, 644 A.2d 1070 (1994)("the judgment must be entered on the docket."). "There are, however, no formal requirements regarding the rendition of a judgment." *Davis v. Davis,* 335 Md. 699, 711, 646 A.2d 365 (1994).

Maryland Rules 1–202(n)[8] and Rule 2–601, "taken together, 'make clear that two acts must occur for an action by the court to be deemed the granting of a judgment: the court must render a final order and the order must be entered on the docket by the clerk.'" *Board of Liquor License Comm'rs for Baltimore City v. Fells Point Cafe, Inc.,* 344 Md. 120, 127, 685 A.2d 772 (1996)(citing *Davis,* 335 Md. at 710, 646 A.2d 365). *See also Doehring v. Wagner,* 311 Md. 272, 275, 533 A.2d 1300 (1987), *rev'd on other grounds,* 315 Md. 97, 553 A.2d 684 (1989). In the case *sub judice,* although the circuit court entered a judgment for absolute divorce, the docket entry did not specify any amount of money. Further, the clerk was not directed by the court to enter money judgments. Therefore, even if the judgment of absolute divorce, by incorporating the Agreement, rendered a money judgment, no money judgment

---

the court orders otherwise, entry of the judgment shall not be delayed pending a determination of the amount of costs.

(b) Method of Entry—Date of Judgment.—The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

Md. Rules 2–601(a) & (b).

**8.** Maryland Rule 1–202(n) defines a judgment as "any order of the court final in its nature entered pursuant to these rules." Md. Rule 1–202(n).

was ever entered, and as such, no payments of interest accrued.

■ Generally, "when there is a conflict between the transcript of a trial and the docket entries, the transcript, unless shown to be in error, will prevail." *Waller,* 332 Md. at 379, 631 A.2d 447; *see also Shade v. State,* 18 Md.App. 407, 411, 306 A.2d 560, 562 (1973). That principle would be applicable here if appellant filed a motion to correct the erroneous docket entry. "Where, however, the rules rely upon the form and date of the docket entry to establish the finality and date of finality of an order, the docket entry will control until corrected." *Waller,* 332 Md. at 379, 631 A.2d 447. *See also Estep v. Georgetown Leather,* 320 Md. 277, 284, 577 A.2d 78 (1990); *Doehring,* 311 Md. at 274–75, 533 A.2d 1300. We are persuaded that in the case *sub judice,* the docket entry itself was sufficient to show finality and that there were no money judgments entered.

## II. Recording and Indexing of Money Judgments *Nunc Pro Tunc*

Appellant contends that any failure of the court to properly index and record money judgments derived at the absolute divorce hearing should have been corrected *nunc pro tunc.* We disagree.

■ "Nunc pro tunc" has been defined as follows:

Lat. Now for then. *In re Peter's Estate,* 175 Okl. 90, 51 P.2d 272, 274. A phrase applied to acts allowed to be done after the time they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done. *Nunc pro tunc* entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake. *Seabolt v. State,* Okl. Cr., 357 P.2d 1014.

Nunc pro tunc merely describes inherent power of court to make its records speak the truth, *i.e.,* to record that which is actually but is not recorded. *Simmons v. Atlantic*

*Post Line R. Co., D.C.S.C.,* 235 F.Supp. 325, 330. *Nunc pro tunc* signifies now for then, or, in other words, a thing is done now, which shall have the same legal force and effect as if done at time when ought to have been done. *State v. Hatley,* 72 N.M. 377, 384 P.2d 252, 254.

*Prince George's Co. v. Commonwealth Land Title,* 47 Md.App. 380, 386, 423 A.2d 270 (1980)(quoting Black's Law Dictionary (5th ed.1979) at 964.) The key phrase in this definition is *"office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake." Id.* (Emphasis added).

 Generally, in order to determine whether relief can be granted *nunc pro tunc,* we must distinguish whether there was a judicial or clerical error in properly entering the entry for judgment. In *Bostwick v. Van Vleck,* 106 Wis. 387, 82 N.W. 302, 303 (1900), the Wisconsin Supreme Court set out "[t]he test to be applied in determining whether an error in a judgment is of a judicial character, or a mere clerical mistake which may be corrected in the court where it was made at anytime, saving intervening rights of third parties and with due regard to equitable considerations," as being

> whether the error relates to something that the trial court erroneously omitted to pass upon or considered and passed upon erroneously, or a mere omission to preserve of record, correctly in all respects, the actual decision of the court, which in itself was free from error. If the difficulty is found to be of the latter character, it may be remedied as a mere clerical mistake, which will not have the effect to change the judgment pronounced in the slightest degree, but merely to correct the record evidence of such judgment.

*Prince George's Co.,* 47 Md.App. at 386, 423 A.2d 270 (quoting *Bostwick,* 82 N.W. at 303, and citing *generally,* 46 Am.Jur.2d *Judgments* §§ 196–203 (1969)). *See also Maryland, Delaware & Virginia R. Co. v. Johnson,* 129 Md. 412, 416–17, 99 A. 600 (1916).

 A judgment of absolute divorce is "a decision by the court granting other relief" within the meaning of Rule 2–

601(a).[9] *See Rohrbeck,* 318 Md. at 45, 566 A.2d 767. The proper entry of more complex decisions, requires "more caution," in the form of more involvement by the court itself. *See id.* at 46, 566 A.2d 767. For a purely clerical omission, the proper method of seeking redress is a motion pursuant to Rule 2–535(d) addressed to the court's revisory power. *Waller,* 332 Md. at 379, n. 1, 631 A.2d 447.[10]

In the case *sub judice,* large sums of money were to be accounted for in assessing a monetary judgment in favor of appellant. If there was error in the entry of the judgment of absolute divorce, it is more likely than not a judicial error rather than a clerical error.[11] In light of our discussion, *supra,* that no monetary judgments were included in the judgment of absolute divorce, it is clear that the use of a *nunc pro tunc* entry would be inappropriate in the case at hand. As such, appellant's Motion for Entry of Judgment *Nunc Pro Tunc* to February 20, 1986, invoking as it did Rule 2–535(d) and the court's inherent power to act *nunc pro tunc,* was properly denied.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**9.** *See supra,* note 7.

**10.** "Clerical mistakes in the record may be corrected at any time. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court." *Waller,* 332 Md. at 380 n. 1, 631 A.2d 447. *See also* Md. Rule 2–535(d).

**11.** The circuit court failed to specify an amount of money that was to be immediately payable to appellant. It would have been beyond the scope of the clerk's duties, to require a review of the Agreement and to enter money judgments on the docket in accordance with its terms. Entering provisions of the Agreement dealing with the $300 and $7000 arrearage are not ministerial tasks.